UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TERESA RAPISARDO,          )<br>                             )<br>     Plaintiff,             )<br>                             )<br>     v.                      )<br>                             )<br>JO ANNE B. BARNHART, Commissioner )<br>Social Security Administration,  )<br>                             )<br>     Defendant.             )<br>_____) | Case No.  C05-0482-JCC-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Teresa Rapisardo proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (the "Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends reversing the ALJ's decision and remanding for further administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a thirty-five-year-old woman with a formal education through the eighth grade and some cosmetology training. AR 67, 82. She has work experience as a hair stylist,

REPORT AND RECOMMENDATION
PAGE -1

cashier, and library assistant. AR 544. Plaintiff last worked in October of 2000.[1] AR 73-74.

On February 26, 2001, plaintiff filed applications for DIB and SSI. AR 67-69, 479-80. Plaintiff alleged that fibromyalgia, carpal tunnel syndrome, depression, anxiety, panic disorder, agoraphobia, and suicidal ideation rendered her disabled as of December 27, 1998.[2] AR 67, 76. In her opening brief, plaintiff amended her alleged onset date to February 1, 2001, the date after which she states she entered recovery from her heroin addiction. Dkt. No. 12. The Commissioner denied plaintiff's applications both initially and upon reconsideration. AR 39-42, 45-51.

Plaintiff requested an administrative hearing and on June 19, 2003, an ALJ issued a decision denying plaintiff's applications. AR 17-29. The ALJ found that, without the effects of her substance abuse, plaintiff's impairments did not meet any of the listings. AR 28. The ALJ found also that plaintiff was capable of performing certain types of sedentary work, such as "entry-level office clerk," and therefore found her not disabled for purposes of the Social Security Act. AR 29. The Appeals Council denied plaintiff's request for review, making the ALJ's June 19, 2003, decision the Commissioner's final decision for purposes of judicial review. AR 6-8.

On March 25, 2005, plaintiff timely filed this civil action seeking review of the Commissioner's final decision. Dkt. No. 1.

II. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (2005).

---

[1] Plaintiff's application stated that she had not worked since December 1998, except for two temporary attempts at work between May and October 2000. AR 69.

[2] Plaintiff also alleged difficulty sleeping and migraine headaches in her Reconsideration Disability Report. AR 108.

### III.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### IV.  EVALUATING DISABILITY

As claimant, Ms. Rapisardo bears the burden of proving that she is disabled within the meaning of the Social Security Act.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled if her impairments are of such severity that she is not only unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *See also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  The Social Security regulations set out a five-step sequential-evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must establish that she is not engaging in any

01 substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant establishes
02 that she has not engaged in any substantial gainful activity, the Commissioner proceeds to step
03 two. At step two, the claimant must establish that she has one or more medically-severe
04 impairments or combination of impairments that limit her physical or mental ability to do basic
05 work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R.
06 §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner
07 moves to step three to determine whether the impairment meets or equals any of the listed
08 impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant
09 who meets or equals one of the listings for the required twelve-month duration requirement is
10 disabled. *Id.*

11 When the claimant's impairment neither meets nor equals one of the impairments listed
12 in the regulations, the Commissioner must proceed to step four and evaluate the claimant's
13 residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the
14 Commissioner evaluates the physical and mental demands of the claimant's past relevant work
15 to determine whether the claimant can still perform that work. *Id.* If the claimant is not able to
16 perform her past relevant work, the burden shifts to the Commissioner at step five to show
17 that the claimant can perform some other work that exists in significant numbers in the national
18 economy, taking into consideration the claimant's RFC, age, education, and work experience.
19 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1100. If the Commissioner finds
20 the claimant is unable to perform other work, then the claimant is found disabled and benefits
21 may be awarded.

## V. DECISION BELOW

23 On June 19, 2003, the ALJ issued a decision denying plaintiff's request for benefits,
24 which found:

25                                                   * * *

26        3.        The claimant has a depressive disorder; an anxiety disorder with panic

attacks; a personality disorder; and a substance abuse disorder. These impairments are severe, and the combination of the claimant's impairments meets the criteria of the listed impairments described in sections 12.04, 12.06, 12.08 and 12.09 of 20 C.F.R., Part 404, Subpart P, Appendix 1.

4. The claimant is disabled due to the combination of her psychiatric disorders and substance abuse disorder.

5. The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of information contained in the medical reports and other evidence in the record.

6. Without consideration of the effects of the claimant's substance abuse, the claimant's impairments do not meet or equal the criteria of any listed impairment described at Appendix 1 of the regulations.

7. Without consideration of the effects of the claimant's substance abuse, and upon her compliance with treatment, the claimant retains a residual functional capacity to perform sedentary work. She can sit 6 hours in an 8-hour workday and stand/walk 4 hours in a workday. She can occasionally climb ramps and stairs, and balance, but she cannot climb ropes, ladders, or scaffolds. She should not be exposed to hazards and heights. She should have limited contact with the public and co-workers, and can perform detailed but not complex work tasks.

8. The limitations imposed by the claimant's residual functional capacity prevent her from performing any of her past relevant work.

\* \* \*

11. Although the claimant is unable to perform a full range of sedentary work, she is capable of performing other occupations such as entry-level clerk (23,000 jobs locally, 59,000-62,000 jobs in the state, 2 million jobs in the nation). A finding of "not disabled" is therefore reached within a framework of the Medical-Vocational Guidelines at Appendix 2 of the regulations.

12. The medical evidence establishes that the claimant would not be disabled if she stopped her substance abuse. Therefore, substance abuse is a contributing factor material to the determination of disability and, in accordance with P.L. 104-121, the claimant is ineligible for disability benefits under the Social Security Act.

13. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

AR 28-29.

REPORT AND RECOMMENDATION
PAGE -5

## VI. ISSUES ON APPEAL

Plaintiff's complaint raises three primary assertions of error:

1. Did the ALJ erroneously reject the plaintiff's testimony regarding the extent of her impairments?

2. Did the ALJ erroneously reject Dr. White's medical opinion?

3. Did the ALJ err by accepting vocational expert testimony that deviated from the Dictionary of Occupational Titles job descriptions without adequately explaining that deviation?

Additionally, if the Court finds that the ALJ committed reversible error, the parties disagree as to whether the case should be remanded for further administrative proceedings, or for an immediate award of benefits.

## VII. DISCUSSION

A. <u>The ALJ improperly rejected the plaintiff's testimony regarding the extent of her impairments</u>.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her testimony and that, as a result, her testimony should be "credited as true." Dkt. No. 12. According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to cause the claimant's symptoms. *Id.* at 9(a) and (b); *Smolen*, 80 F.3d at 1281-2; SSR 96-7p, at *2. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Smolen*, 80 F.3d at 1282; *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted)). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in her testimony, or between her testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

The ALJ found that plaintiff suffered from depressive disorder, an anxiety disorder with panic attacks, a personality disorder, and a substance-abuse disorder. AR 28. These severe mental impairments reasonably could have been found to cause the anxiety-related symptoms alleged by plaintiff. Indeed, plaintiff complained of difficulty functioning outside her home and in social situations. AR 522-25, 532-39. Nevertheless, the ALJ determined that plaintiff's credibility was "very low" in light of the evidence available in the record. AR 25, 28. Because there were no allegations of malingering, the ALJ was required to provide clear and convincing reasons for rejecting plaintiff's testimony.

The ALJ did not provide clear and convincing reasons for rejecting plaintiff's subjective symptom testimony. The chief reason offered by the ALJ for disbelieving plaintiff's testimony was that he found her daily activities to be inconsistent with the severity of her alleged symptoms. AR 22, 25. For instance, the ALJ noted that plaintiff was capable of getting to her daily methadone and mental-therapy sessions, performing light housework, and having "occasional" contact with a former boyfriend. AR 22, 25, 473, 510. He also noted that plaintiff was able to take care of a pet cat and that she fed squirrels and birds around her home and ran some errands. AR 25, 511. According to the ALJ, "[t]hese daily activities suggest that the claimant is not as physically limited as she has alleged." AR 25.

These observations, however, do not provide an appropriate foundation to reject the plaintiff's symptom testimony. An ALJ may reject a claimant's symptom testimony when evidence suggests the claimant can spend a "substantial part of her day performing household chores or other activities that are transferable to a work setting." *Smolen*, 80 F.3d at 1284 n.7 (internal citations omitted). A finding of disability, however, does "not require that claimants be utterly incapacitated to be eligible for benefits[.]" *Id*. Here, evidence suggesting plaintiff is capable of feeding squirrels and performing light household chores does not contradict her claims that she is depressed and suffers from agoraphobic anxiety. Similarly, the fact that plaintiff has "occasional" contact with a former boyfriend does not impeach her credibility. While it is true that plaintiff gets to methadone treatment on a daily basis, she does so by way of a cab provided by DSHS. AR 532. Indeed, the record demonstrates that her anxiety-related symptoms prevent her going to the treatment facility using the bus. AR 533.

The ALJ also impugned plaintiff's credibility based on her presentation and demeanor at the hearing. AR 26. He noted that she was neatly groomed, "logical, directed, and fully oriented." *Id*. AR 514. He also observed that she did not appear to be in pain or discomfort, despite some occasional tears. *Id*. Yet, as even the ALJ acknowledged, these observations are based on a "short-lived, one time situation and cannot be considered conclusive[.]" *Id*. Accordingly, these observations cannot rise to the level of "clear and convincing" reasons for rejecting the plaintiff's testimony.

Underlying the ALJ's determination that plaintiff's "credibility [is] nil" was that she was a long-time drug addict who apparently was able to function and work while she was still using drugs. AR 25-26. Yet, her last gainful employment was approximately seven years ago, and it appears plaintiff suffered symptoms of panic attacks during that time. AR 534. Moreover, it is reasonable to assume her condition has worsened since then. Indeed, the medical expert testified that this appeared to be the case. AR 542. While it appears plaintiff was able to panhandle and "boost" in order to obtain money for drugs, being able to perform

REPORT AND RECOMMENDATION
PAGE -8

01 these activities while under the influence of heavy drugs is not inconsistent with the
02 symptoms she currently describes.  AR 529-30.  The ALJ failed to provide clear and
03 convincing reasons for discounting the plaintiff's testimony when looking at the record as a
04 whole.

05       B. <u>The ALJ erroneously rejected Dr. White's medical opinion.</u>

06     The opinions of examining physicians are to be given more weight than non-examining
07 physicians and, when uncontradicted, may not be rejected without clear and convincing
08 evidence.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  An ALJ may reject the
09 controverted opinions of an examining physician only when he provides specific and
10 legitimate reasons that are supported by the record.  *Id.* at 830-31.

11     Dr. White is a clinical psychologist and neuropsychologist who examined plaintiff,
12 reviewed her files, and interviewed her chemical dependency counselors and psychotherapists
13 in November, 2002.[3]  AR 465-77.  He observed that the plaintiff's mental status functioning
14 was intact and that she had recent and remote memory intact.  However, he also opined that
15 plaintiff's severe depression, anxiety disorder, agoraphobia, and panic disorder prevented her
16 from working full-time.  AR 476.  He also opined that, absent involvement in a systematic
17 recovery program, plaintiff would not be able to work in the future.  *Id*.  He assessed her GAF
18 ("Global Assessment of Functioning") at 40, and also administered the Beck Depression
19 Inventory test, and scored plaintiff at 61, "which is suggestive of severe depression."  AR
20 473.  The ALJ rejected Dr. White's opinions.  AR 21-22.  He asserted that they were not
21 based on objective observations, were overly dependent on plaintiff's non-credible reports,
22 and were thus "unsupported and not convincing."  AR 21-22.  He then categorically
23 discounted any other medical source who may have relied on Dr. White's report, without
24 specifically identifying those reports.  AR 22.

---

26     [3]The report is actually dated January 6, 2003.  AR 465.

REPORT AND RECOMMENDATION
PAGE -9

Dr. White's diagnoses were generally consistent with every other diagnosis in the record. AR 465-67. However, there were conflicting medical opinions regarding the extent to which those diagnoses limited plaintiff's ability to work. AR 476, 237, 238-46, 249-50. Hence, the ALJ was obliged to provide specific and legitimate reasons for rejecting Dr. White's opinions. He failed to do so.

The chief reason given by the ALJ to reject Dr. White's opinions was that he believed it relied too heavily on plaintiff's "case history" and self reporting, which, as discussed above, he did not find credible. Dr. White's opinions undoubtedly rely heavily on plaintiff's self-described symptoms. Indeed, it is hard to imagine a psychological report that does not. However, because the ALJ's evaluation of plaintiff's credibility was legally flawed, this cannot serve as a "specific and legitimate" reason for disregarding Dr. White's opinion.

The ALJ also indicated that plaintiff's "history and symptoms are inconsistent and Dr. White's objective observations do not support his conclusions." AR 21. For example, the ALJ cited the fact that plaintiff performed adequately on memory tests and basic questions requiring the use of practical judgment and reasoning. AR 22. According to the ALJ, these facts undermined her self-reported symptoms and undermined Dr. White's diagnoses and opinions regarding her ability to function in the workplace. AR 21-22. However, as Dr. White noted, the plaintiff's mental status and recent and remote memory were intact. The ALJ did not address how keeping an appointment with a doctor or having a lucid conversation with that doctor would be inconsistent with his diagnoses of severe depression, generalized anxiety, and panic disorder. The ALJ also failed to indicate how these facts were inconsistent with the doctor's opinion that the plaintiff's mental impairments limited her ability to function in the competitive workplace. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06 (indicating diagnostic requirements and symptoms for affective and anxiety-related disorders).

The ALJ indicated that Dr. White's opinions relied upon case history from non-

01 acceptable medical sources. AR 21.  The regulations define "acceptable medical sources" as
02 licensed physicians, licensed or certified psychologists, licensed optometrists, licensed
03 podiatrists, and qualified speech-language pathologists.  20 C.F.R. §§ 416.913(a),
04 404.15139(a).  Of the five sets of medical records analyzed in Dr. White's report, only one
05 was from a non-acceptable source.[4]  Because the ALJ has the obligation to develop the
06 medical record, *Smolen*, 80 F.3d at 1288, if he was using this as a justification for rejecting
07 Dr. White's opinion, the ALJ should not have rejected summaries from four "acceptable
08 medical sources" in order to prevent one non-medically acceptable source from being
09 considered.  He should have developed the medical record in more detail.  By identifying
10 which evidence was from an unacceptable source and why, it was not acceptable.

11       In this case, as mentioned above, the ALJ not only decided to reject Dr. White's
12 opinions, he took the extraordinary step of categorically discounting any other medical source
13 that made reference to Dr. White's opinion.  AR 22.  He did not specifically identify which
14 reports this included.  On remand, the ALJ will give proper consideration and evaluation to
15 Dr. White's report.  The ALJ will also review all other medical reports that make reference to
16 Dr. White's report and reevaluate those reports as well.

17       C.    <u>The ALJ erred by accepting vocational expert testimony that deviated from the Dictionary of Occupational Titles job descriptions without adequately explaining that deviation.</u>

19       After a claimant has demonstrated that she has a severe impairment that prevents her
20 from doing her past relevant work, she has made a *prima facie* showing of disability. *Tackett*,
21 180 F.3d at 1100-01.  The burden then shifts to the Commissioner at step five to demonstrate

---

[4] The intake summary by Michael Kelly, MHP, is the only non-physician report explicitly relied upon by Dr. White's report.  AR 465–67.  According to the Dictionary of Initials and Acronyms Used by Counselors, "MHPs are qualified mental health providers who have been designated by an agency or hospital to meet contractual requirements with the county to perform duties in accordance with Washington State law." *See* http://www.counselingseattle.com/acronyms/i-m.htm#-M-.

REPORT AND RECOMMENDATION
PAGE -11

01 that, in light of the claimant's RFC, age, education and work experience, she can perform other
02 types of work that exist in "significant numbers" in the national economy. *Id.*; 20 C.F.R. §§
03 404.1560(b)(3), 416.960(b)(3).  When the Medical-Vocational Guidelines do not accurately
04 reflect the claimant's non-exertional impairments, the Commissioner must use them as a
05 framework in conjunction with a vocational expert ("VE"). *Tackett*, 180 F.3d at 1101; *see*
06 *also* SSR 85-15, at *4.

07       The Dictionary of Occupational Titles ("DOT") classifies jobs by their exertional and
08 skill requirements and serves as the Commissioner's "primary source of reliable job
09 information." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT, however, is
10 not the only source of acceptable evidence regarding job classifications. *Johnson v. Shalala*,
11 60 F.3d 1428, 1435 (9th Cir. 1995).  Rather, it raises a rebuttable presumption that the job
12 classification is correct. *Id*.  The Commissioner may rebut the presumption and deviate from
13 the DOT when she relies upon persuasive testimony from a VE that justifies the deviation.
14 *Id*. at 1435-36.  A VE who identifies jobs based upon an accurate hypothetical and who
15 explains why they deviate from the DOT's classifications satisfies this burden. *Id*. at 1436.

16       Here, the ALJ concluded that plaintiff was "unable to perform a full range of
17 sedentary work, [but was] capable of performing other occupations such as entry-level office
18 clerk[.]"  AR 29.  The DOT classifies this "entry-level office clerk" position as "light" in skill
19 level.  AR 497.  The VE explained that plaintiff's prior work experience as a librarian
20 assistant and drug-store clerk provided some transferable skills that could be used in the
21 entry-level office-clerk position.  AR 546.  He also explained that the clerk position would
22 provide her the option of "varying the sitting and standing." *Id*.  Although his explanation
23 could have been more articulate, the VE adequately explained why some of plaintiff's skills
24 were transferable to the clerk position.

25       In light of the fact that the ALJ found plaintiff able to perform sedentary work only,
26 he should have discussed the discrepancy between the DOT's classification of the position as

REPORT AND RECOMMENDATION
PAGE -12

"light" in exertional level and the VE's testimony. SSR 00-4p, at *4. Indeed, Social Security Ruling 00-4p states that ALJ's "must explain the resolution of the conflict" and "explain in the . . . decision how he or she resolved it." *Id.* Although social security rulings do not carry "the force of law," they are binding on ALJs, and courts defer to them to the extent they are consistent with the applicable social security statutes and regulations. *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted). Here, the ALJ failed to explain the deviation in his decision and should do so upon remand.

The Commissioner argues that any error here was harmless and does not require remand. Dkt. No. 14; *See, e.g., Batson v. Commissioner of Social Security*, 359 F.3d 1190 (9th Cir. 2004) (applying the harmless-error standard). However, because the entry-level clerk position was the only position the VE identified, if it was in error, plaintiff would have been found disabled. Thus, the error is not harmless.

### D. This Case Should Be Remanded for Further Administrative Proceedings.

Having determined that the ALJ erred and that a remand is appropriate, the Court must determine whether the case should be remanded for an immediate award of benefits, or for further administrative proceedings. The parties disagree as to what action is appropriate in this case.

The court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

      A remand for further administrative proceedings is appropriate. As discussed above, the ALJ committed error in several instances. Nevertheless, a finding of disability is not necessarily the pre-determined decision as a result of these errors. Additionally, the ALJ must resolve whether plaintiff actually can perform the entry-level office-clerk position identified by the VE. Finally, uncertainty remains as to when plaintiff stopped her drug and alcohol use, and whether such use would still preclude a finding of disability here. Because of these remaining ambiguities, the Court need not credit plaintiff's testimony as true and declines to do so. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (explaining that the "credit as true" doctrine is discretionary).

## VIII.  CONCLUSION

      For the reasons discussed above, the Court recommends that this case be reversed and remanded for further administrative proceedings not inconsistent with this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

      DATED this 19th day of December, 2005.

                                                /s/ James P. Donohue
                                                JAMES P. DONOHUE
                                                United States Magistrate Judge